UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ELISE AASGAARD, ) | |
| NICOLE JAUER REYNOLDS, and ) | |
| MICHELLE BLAIR, ) | |
| individually and on ) | |
| behalf of all others similarly-situated, ) | |
| ) | |
| Plaintiffs ) | No. 4:16-CV-1408 |
| v. ) | |
| ) | |
| WELSPUN USA, INC., and ) | |
| WELSPUN INDIA LTD. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs, Elise Aasgaard, Nicole Jauer Reynolds, Michelle Blair, individually and on behalf of all other similarly-situated in the United States, allege the following facts and claims upon personal knowledge, investigation of counsel, and information and belief.

**CASE SUMMARY**

1. This case arises out of Defendants Welspun India Ltd. ("Welspun India") and Welspun USA, Inc.'s ("Welspun USA") (together "Defendants" or "Welspun") deceptive, unfair, and false merchandising practices regarding Welspun's fake Egyptian Cotton sheets, including but not limited to those sold to consumers at Wal-mart under the Better Homes and Gardens and Crowning Touch brands, at Kohls under the Jennifer Lopez brand, at Bed Bath & Beyond under the Perfect Touch and Crowning Touch brands, and at Target under the Fieldcrest brand (the "Products[1]").

---

[1] Plaintiffs anticipate the list of fraudulent Products may change as discovery reveals the extent of the scam and reserve the right to amend this complaint in accordance with the Federal Rules.

1

2. On the labels of the Products and in their marketing materials, Defendants prominently represent that the Products are made from "100% Egyptian cotton" or "Egyptian cotton."

3. The Products, however, are not made from Egyptian cotton.

4. Instead, they are made from Indian cotton, which is a far inferior fabric that sells for 40-50% less than Egyptian cotton.

5. Because the Products are made from the inferior Indian cotton, the representation that the Products are made from Egyptian cotton is false, deceptive, and misleading.

6. In addition, by claiming the Products are made from Egyptian cotton, the labels of the Products create the false impression and have the tendency and capacity to mislead consumers (*see* 15 CSR 60-9.020) into believing that the Products are made from Egyptian cotton, when in fact the Products are made from Indian cotton. Moreover, the overall format and appearance of the Products have the tendency and capacity to mislead consumers (15 C.S.R. 60-9.030) because they create the false impression that the Products are made from Egyptian cotton.

7. Plaintiffs bring this case to recover damages for Defendants' false, deceptive, and misleading marketing and advertising in violation of the Missouri Merchandising Practices Act ("MMPA") and common law.

## PARTIES

8. Plaintiff Elise Aasgaard is a resident of the City of St. Louis, Missouri. In late 2015 or early 2016, Plaintiff Aasgaard purchased Better Homes and Gardens 400 TC Egyptian cotton sheet set at Walmart for personal, family, or household purposes. Plaintiff Aasgaard reasonably believed that the Product was made of Egyptian cotton, and she was deceived by the false label.

9. Plaintiff Nicole Jauer Reynolds is a resident of the City of St. Louis, Missouri. In late 2014, Plaintiff Reynolds purchased Fieldcrest 100% Egyptian cotton sheets at Target for personal, family, or household purposes. Plaintiff Reynolds reasonably believed that the Product was made of Egyptian cotton, and she was deceived by the false label.

10. Plaintiff Michelle Blair is a resident of St. Louis, Missouri. In late 2014 or 2015, Plaintiff Blair purchased Perfect Touch 100% Egyptian Cotton sheets at Bed Bath & Beyond for personal, family, or household purposes. Plaintiff Blair reasonably believed that the Product was made of Egyptian cotton, and she was deceived by the false label.

11. Plaintiffs' claims are typical of all class members. The labels of each of the Products purchased by Plaintiffs and the Class are substantially similar in that they all uniformly claim that the Products are made from "Egyptian cotton" when they in fact are made from Indian cotton. As a result, they are deceptive, false, and unfair, and injure Plaintiffs and Class members in the same way.

12. Defendant Welspun USA, Inc. is a Delaware corporation with its principal place of business in New York, New York.

13. Defendant Welspun India Ltd. is a corporation based in India.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over the subject matter presented by this Class Action Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), which explicitly provides for the original jurisdiction of the federal courts of any class action in which any member of the Putative Class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs, and there are more than 100 class members.

15.     Pursuant to 28 U.S.C. § 1332(d)(2)(A), Plaintiffs allege that damages resulting from the claims in this action are in excess of $5,000,000.00, in the aggregate, exclusive of interest and costs.

16.     This Court has personal jurisdiction over Defendant Welspun USA because it has had more than minimum contacts with the State of Missouri and has purposefully availed itself of the privilege of conducting business in this state, and has purposefully directed and targeted business in this state. In addition, as explained below, Defendant has committed affirmative tortious acts within the State of Missouri that gives rise to civil liability, including targeting and distributing the misleading Product for sale throughout the State of Missouri. Welspun USA delivered the Products into the stream of commerce with the expectation that they would be purchased by or used by consumers in this state.  For example, the label of Plaintiff Blair's sheets indicates that the sheets are from Welspun USA.

17.     This Court has personal jurisdiction over Defendant Welspun India because it has had more than minimum contacts with the State of Missouri and has purposefully availed itself of the privilege of conducting business in this state, and has purposefully directed and targeted business in this state. In addition, as explained below, Defendant has committed affirmative tortious acts within the State of Missouri that gives rise to civil liability, including targeting and distributing the misleading Product for sale throughout the State of Missouri. Defendant Welspun India has contracted directly or through its wholly owned subsidiaries with retailers located in the United States who sell Welspun products in Missouri in a purposeful, targeted manner.  Welspun India manufactures 1/5 of all towels sold in the United States and Missouri.  Welspun India delivered the Products into the stream of commerce with the expectation that they would be purchased by or used by consumers in this state.  For example,

4

the label of Plaintiff Blair's sheets indicates that the sheets were made in India.

18.     Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(a) because, as set forth below, Defendants conduct business in, and may be found in, this district, and Plaintiffs purchased the Product in this judicial District.

## ALLEGATIONS OF FACT

15.     Welspun India manufactures textiles, including the Products. Welspun India is among the largest home textile manufacturers in the world.  Welspun specifically targets the United States, and Welspun India's textiles account for 20% of all towels purchased in the USA. Welspun India supplies textiles to 14 of the top 30 U.S. retailers.

16.     Welspun USA is a subsidiary of Welspun India.

17.     On information and belief, Welspun USA markets and distributes textiles, including the fake Products, throughout the United States.  By way of example, the label of Plaintiff Blair's sheets indicates that the sheets are from Welspun USA.

18.     On information and belief, Welspun USA distributes the Products to at least the following retailers, who in turn sell them to consumers under at least the following corresponding brand names: Wal-mart (Better Homes and Gardens and Crowning Touch brands), Kohls (Jennifer Lopez brand), Bed Bath & Beyond (Perfect Touch and Crowning Touch brands), and Target (Fieldcrest brand).

19.     Each of the Products is marked as being made of Egyptian cotton.  Egyptian cotton is prized for its high quality.  Because the supply of Egyptian cotton has declined by as much as 30% over the past ten years, the price for Egyptian cotton has soared.  Demand for the luxury fabric, however, remains strong.

5

20. Each of the Products, however, is in fact made from Indian cotton, a far inferior fabric that sells from 40-50% less than Egyptian cotton.

21. In fact, in August 2016, Target announced the following:

> One of Target's vendors, Welspun, was one of the producers of Egyptian Cotton 500-thread count sheets under the Fieldcrest label for Target. After an extensive investigation, we recently confirmed that Welspun substituted another type of non-Egyptian cotton when producing these sheets between August 2014 and July 2016…This was a clear violation of both Target's Code of Conduct and our Standards of Vendor Engagement, and was contrary to the high ethical standards to which we hold ourselves, and our vendors.  As soon as our investigation confirmed the substitution, we pulled all remaining product from Target stores and Target.com.  We have informed Welspun that, due to this conduct, we are in the process of terminating our relationship with them.

22. Other retailers, including Wal-mart, J.C. Penney, and Bed Bath & Beyond are reportedly also investigating.

23. By attempting to pass off the Indian cotton as Egyptian cotton, Defendants are able to entice consumers like Plaintiffs and the class members to pay a premium for the Products or pay more for them than they otherwise would have had the truth be known.

24. Neither Plaintiffs nor any reasonable consumer would expect that Products labeled as being made from "Egyptian cotton" were actually made from some other inferior fabric.

25. As a result of Defendants' deceitful labels and marketing, Defendants were able to charge and Plaintiffs and Class Members paid a premium for the Products.  The Products, however, were worth less than they were represented to be, and Plaintiffs and Class Members paid extra for them due to their misleading labels.

26. Defendants' conduct violates the MMPA's prohibition of the act, use, or employment by any person of any deception, fraud, false pretense, false promise,

6

misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce. § 407.020, RSMo, as well as the common law.

27.     Indeed, Defendants have admitted that "[w]ithout any ambiguity, the fault is on our side."

## CLASS ALLEGATIONS

28.     Pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), Plaintiffs bring this action on their own behalf and on behalf of the following Classes:

> <u>The Missouri Class:</u> All citizens of Missouri who purchased the Products for personal, household, or family purposes in the five years preceding the filing of this Petition (the "Class Period").
>
> <u>The Nationwide Class:</u> All citizens of the United States who purchased the Products for personal, household, or family purposes during the Class Period.

29.     Excluded from the Class are: (a) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (b) any entity in which Defendants have a controlling interest, to include, but not limited to, their legal representative, heirs, and successors; (c) all persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (d) any judicial officer in the lawsuit and/or persons within the third degree of consanguinity to such judge.

30.     Upon information and belief, the Class consists of millions of purchasers. Accordingly, it would be impracticable to join all Class Members before the Court.

31. There are numerous and substantial questions of law or fact common to all of the members of the Class and which predominate over any individual issues. Included within the common question of law or fact are:

    a. Whether the claim that the Products are made from "Egyptian cotton" is false, misleading, and deceptive;

    b. Whether Defendants violated the MMPA by selling the Products with false, misleading, and deceptive representations;

    c. Whether Defendants' acts constitute deceptive and fraudulent business acts and practices or deceptive, untrue, and misleading advertising;

    d. Whether the labels of the Products create false impressions and have the tendency and capacity to mislead consumers;

    e. Whether Defendants created and breached the express warranty that the Products were made from Egyptian Cotton;

    f. Whether Defendants were unjustly enriched; and

    g. The proper measure of damages sustained by Plaintiffs and Class Members.

32. The claims of the Plaintiffs are typical of the claims of Class Members, in that they share the above-referenced facts and legal claims or questions with Class Members, there is a sufficient relationship between the damage to Plaintiffs and Defendants' conduct affecting Class Members, and Plaintiffs have no interests adverse to the interests other Class Members.

33. Plaintiffs will fairly and adequately protect the interests of Class Members and have retained counsel experienced and competent in the prosecution of complex class actions including complex questions that arise in consumer protection litigation.

34. A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all Class Members is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

   a. The claim presented in this case predominates over any questions of law or fact, if any exists at all, affecting any individual member of the Class;

   b. Absent a Class, the Class Members will continue to suffer damage and Defendants' unlawful conduct will continue without remedy while Defendants profits from and enjoys its ill-gotten gains;

   c. Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

   d. When the liability of Defendants has been adjudicated, claims of all Class Members can be administered efficiently and/or determined uniformly by the Court; and

   e. This action presents no difficulty that would impede its management by the court as a class action, which is the best available means by which Plaintiffs and members of the Class can seek redress for the harm caused to them by Defendants.

35. Because Plaintiffs seek relief for the entire Class, the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying

adjudications with respect to individual member of the Class, which would establish incompatible standards of conduct for Defendants.

36. Further, bringing individual claims would overburden the Courts and be an inefficient method of resolving the dispute, which is the center of this litigation. Adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interest of other members of the Class who are not parties to the adjudication and may impair or impede their ability to protect their interests. As a consequence, class treatment is a superior method for adjudication of the issues in this case.

37. Defendants have acted on grounds that apply generally to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## CLAIMS FOR RELIEF

### First Claim for Relief

### Violation of Missouri's Merchandising Practices Act

*(On Behalf of the Missouri Class)*

38. Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

39. Missouri's Merchandising Practices Act (the "MMPA") prohibits the act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce § 407.020, RSMo.

40. Defendants' conduct constitutes the act, use or employment of deception, fraud, false pretenses, false promises, misrepresentation, unfair practices and/or the concealment, suppression, or omission of any material facts in connection with the sale or advertisement of

10

any merchandise in trade or commerce because Defendants misrepresent that the Products are made from Egyptian Cotton when they in fact are made from inferior Indian Cotton.

41. In addition, by claiming the Products are made from Egyptian Cotton, Defendants' Products create the false impression and have the tendency and capacity to mislead consumers (*see* 15 CSR 60-9.020) into believing that the Products are solely comprised of Egyptian Cotton, when they in fact are made of Indian Cotton.  Moreover, the overall format and appearance of the Products have the tendency and capacity to mislead consumers (15 C.S.R. 60-9.030) because they create the false impression that the Products are made from Egyptian Cotton.

42. The Products were therefore worth less than the Products as represented, and Plaintiffs and Class Members paid extra or a premium for them.

43. Plaintiffs and Class Members purchased the Products for personal, family, or household purposes and thereby suffered an ascertainable loss as a result of Defendants' unlawful conduct as alleged herein, including the difference between the actual value of the Products and the value of the Products if they had been as represented.

44. Plaintiffs also seek injunctive relief to remedy Defendants' ongoing deceptive practices.

45. Plaintiffs also seek punitive damages in accordance with § 407.025.1 because Defendants' actions were taken with an evil motive or reckless indifference.

## Second Claim for Relief

### Unjust Enrichment

*(On Behalf of the Nationwide Class)*

46. Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

47. By purchasing the Products, Plaintiffs and the class members conferred a benefit on Defendants in the form of the purchase price of the fraudulent Products.

48. Defendants appreciated the benefit because, were consumers not to purchase the Products, Defendants would have no sales and make no money.

49. Defendants' acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendants' fraudulent and misleading representations about the Products.

50. Equity cannot in good conscience permit Defendants to be economically enriched for such actions at Plaintiffs' and Class Members' expense and in violation of law, and therefore restitution and/or disgorgement of such economic enrichment is required.

### Third Claim for Relief

### Breach of Express Warranty

*(On Behalf of the Nationwide Class)*

51. Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

52. Defendants made the affirmation of fact and the promise to Plaintiffs and the class members that the Products were made from Egyptian cotton, guaranteeing to Plaintiffs and the class members that the Products were in conformance with the representation.

53. This affirmation of fact and promise became part of the basis of the bargain in which Plaintiffs and class members purchased Defendants' Products, and Plaintiffs and class members relied on the affirmations when making their purchasing decisions.

54. Defendants breached their express warranty that the Products were made from Egyptian cotton by providing Plaintiffs and class members with Products that were not made from Egyptian cotton.

55. As a result of Defendants' breach of warranty, Plaintiffs and the class members have been deprived of the benefit of their bargain in that they bought Products that were not what they were was represented to be, and they have spent money on Products that had less value than was reflected in the premium purchase price they paid for the Products.

56. Because Defendants have actual knowledge that its Products are not as warranted, pre-suit notice of this claim is not required.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all similarly situated persons, prays the Court:

a. Grant certification of this case as a class action;

b. Appoint Plaintiffs as Class Representative and Plaintiffs' counsel as Class Counsel;

c. Award compensatory damages to Plaintiffs and the proposed Class, or, alternatively, require Defendants to disgorge or pay restitution of its ill-gotten gains;

d. Issue an injunction preventing Defendants from continuing their unlawful merchandising practices;

e. Award pre- and post-judgment interest;

e. Award reasonable and necessary attorneys' fees and costs;

f. Award punitive damages; and

    g.    For all such other and further relief as may be just and proper.

Dated this 2nd day of September 2016.

        Elise Aasgaard, Nicole Jauer Reynolds, and Michelle Blair, Individually, and on Behalf of a Class of Similarly Situated Individuals, Plaintiffs

    By:    */s/ Stuart L. Cochran*

        Matthew H. Armstrong (MoBar 42803)
ARMSTRONG LAW FIRM LLC
8816 Manchester Rd., No. 109
St. Louis MO 63144
Tel: 314-258-0212
Email: matt@mattarmstronglaw.com

Stuart L. Cochran (MoBar 68659)
R. Dean Gresham *(pro hac vice application forthcoming)*
Bruce W. Steckler *(pro hac vice application pending)*
STECKLER GRESHAM COCHRAN
12720 Hillcrest Rd., Ste. 1045
Dallas, TX 75230
(p) 972.387.4040
(f) 972.387.4041
scochran@scochranlaw.com
dgresham@greshampc.com
bruce@stecklerlaw.com

Attorneys for Plaintiffs and the Putative Class